IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WIRELESS ADVANCED VEHICLE ELECTRIFICATION, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>WITRICITY CORPORATION, a Delaware corporation; JOE BENZ, an individual; JUSTIN SCALZI, an individual; STEVEN BALL, an individual; ROBERT EISERT, an individual; PRADEEP GADDAM, an individual; GARRETT HARMSEN, an individual; JORY PEPPELAAR, an individual; WYLEE STAPLES, an individual; GAYLA STEWART, an individual; ADEEL ZAHEER, an individual; RUBEN GOMEZ, an individual; GLEN AGUILAR, an individual; JEFFREY HARDING, an individual; JUSTIN NORDLUND, an individual; and MELANIE ESPINOSA, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>2:24-cv-00577-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Now before the court is Defendant Edward Joseph Benz III's Motion to Dismiss for lack of personal jurisdiction.[1] The court DENIES Benz's Motion for the reasons explained below.[2]

---

[1] Dkt. 40, *Defendant Edward Joseph Benz, III's Rule 12(b)(2) Motion to Dismiss* (*Motion to Dismiss*).

[2] Pursuant to DUCivR 7-1(g), the court finds oral argument is not necessary for this motion and will decide it on the papers.

## BACKGROUND

On August 15, 2024, Plaintiff Wireless Advanced Vehicle Electrification, LLC (WAVE) initiated suit against Benz and 15 other defendants in this court.[3] WAVE is a Delaware LLC with its principal place of business in Utah.[4] WAVE operates in the inductive charging industry, offering high-power wireless charging systems for the heavy-duty electric vehicle market.[5]

Benz formerly served as the chief legal officer and general counsel for co-defendant WiTricity Corporation, one of WAVE's direct competitors operating in the inductive charging industry.[6] Benz became WiTricity's chief executive officer on May 13, 2024.[7] WiTricity has operated a Utah facility since 2013 and, at the time WAVE filed its Complaint, the company was actively hiring for open positions in Utah.[8] Between July 29, 2024 and July 31, 2024, 12 of WAVE's 17 employees resigned and subsequently accepted employment at WiTricity.[9] Eight of these employees are Utah residents.[10]

Benz resides in Georgia.[11] WAVE alleges Benz orchestrated the resignations and conspired with the departing employees to raid WAVE's proprietary information for WiTricity's benefit.[12]

---

[3] *See* Dkt. 3, *Verified First Amended Complaint (Amended Complaint)*. WAVE initially brought suit against Benz and 10 other defendants on August 9, 2024 but added five defendants in its Verified First Amended Complaint.

[4] *Id.* ¶ 1.

[5] *Id.* ¶¶ 22–24.

[6] *Id.* ¶¶ 27–34, 50.

[7] Dkt. 55-1, *Declaration of Edward Joseph Benz III* ¶ 5.

[8] *Amended Complaint* ¶ 28.

[9] *Id.* ¶ 50.

[10] *Id.* ¶¶ 5–17; Dkt. 48-7, *Declaration of Joey Peppelaar* ¶ 2. Because Peppelaar moved from Utah to Georgia prior to his resignation at WAVE and subsequent employment at WiTricity, the court will consider him a Georgia resident.

[11] Dkt. 40-1, *Declaration of Edward Joseph Benz III* ¶ 5.

[12] *Amended Complaint* ¶¶ 49–52.

WAVE brings seven causes of action against Benz: (1) violation of the Defend Trade Secrets Act (DTSA); (2) violation of Utah Uniform Trade Secrets Act (UTSA); (3) civil conspiracy to Violate the DTSA and UTSA; (4) unfair competition; (5) tortious interference; (6) conversion; and (7) civil conspiracy to violate the Computer Fraud and Abuse Act and the Utah's Computer Abuse and Discovery Act.[13]

## LEGAL STANDARD

A plaintiff opposing a Rule 12(b)(2) motion to dismiss bears the burden to establish the exercise of jurisdiction comports with the long-arm statute of the forum state and constitutional due process.[14] When the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing."[15] The court must treat well-pleaded factual allegations in the complaint as true, unless controverted by an affidavit or declaration.[16] When a defendant has produced evidence to challenge personal jurisdiction, the plaintiff has a duty to come forward with competent proof in support of the jurisdictional allegations of the complaint, but courts will resolve all factual disputes in favor of the plaintiff.[17] A defendant's conclusory statements are insufficient to controvert a plaintiff's well-pleaded facts or overcome a plaintiff's prima facie showing.[18]

---

[13] *Id.* ¶¶ 197–287.

[14] *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).

[15] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

[16] *Butler v. Daimler Trucks N. Am., LLC*, 433 F. Supp. 3d 1216, 1227 (D. Kan. 2020) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).

[17] *Id.*

[18] *Id.*; *see also Safety Techs., L.C. v. LG Techs. LTEE*, No. 98-2555, 1999 WL 588221, at *3 (D. Kan. July 9, 1999) (affidavits consisting of "only conclusory statements" were "inadequate to sufficiently controvert the jurisdictional allegations set forth in the complaint").

Because Utah's long-arm statute extends the jurisdictional reach of Utah courts to non-residents to the fullest extent permitted by the U.S. Constitution,[19] the traditional two-step jurisdictional analysis effectively collapses into the constitutional due process inquiry.[20]  And it is well established the Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations."[21]  Thus, for a court to have specific personal jurisdiction[22] over a nonresident defendant, a plaintiff must show there are minimum contacts between the defendant and the forum state.[23]

Minimum contacts exist if the defendant has purposefully directed his activities at residents of the forum state, and the alleged injuries arise out of or are related to those activities.[24]  A defendant's activities are "purposefully directed" at residents of the forum state if (1) defendant has continuing relationships with the forum state; (2) defendant deliberately exploited the forum state market; or, (3) defendant's actions caused harmful effects in the forum state (the Harmful Effects Test).[25]  Under the Harmful Effects Test, the court must find the defendant engaged in intentional action expressly aimed at the forum state with knowledge that the brunt of the injury would be felt there.[26]

---

[19] *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 950–51 (Utah 2008) (quoting Utah Code § 78B-3-201(3)).

[20] *See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

[21] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985).

[22] The parties agree there is no basis for this court to exercise general jurisdiction over Benz.

[23] *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[24] *Burger King Corp.*, 471 U.S. at 472.

[25] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017).

[26] *Dudnikov*, 514 F.3d 1063 at 1072.

Even where a plaintiff establishes minimum contacts, the exercise of jurisdiction over a non-resident defendant must still comport with traditional notions of fair play and substantial justice.[27] To this end, courts will consider "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."[28]

## ANALYSIS

Benz seeks dismissal for lack of personal jurisdiction,[29] asserting WAVE wrongfully sued him "in his personal and individual capacity despite not even alleging wrongdoing in his personal and individual capacity."[30] Benz argues the Amended Complaint fails to allege "actionable claims against him in his personal capacity" because it outlines conduct stemming from his position as WiTricity's CEO.[31] However, Benz is not immune from suit in Utah merely because he was serving as WiTricity's CEO at the time he undertook allegedly tortious conduct. Ultimately, WAVE's allegations regarding Benz's tortious conduct satisfy the Harmful Effects Test and are otherwise consistent with Due Process such that the exercise of personal jurisdiction over Benz is proper.

---

[27] *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 320 (1945).

[28] *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980).

[29] *See* Dkt. 40, *Defendant Edward Joseph Benz, III's Rule 12(b)(2) Motion to Dismiss* (*Motion to Dismiss*).

[30] *Motion to Dismiss* at 3.

[31] *Id.*

### I.   Benz Is Not Individually Immune from Personal Jurisdiction by Virtue of His Status as WiTricity's CEO.

Benz argues he is immune from this court's exercise of personal jurisdiction over him because he engaged in the complained-of conduct while serving as WiTricity's CEO.[32] But Benz fails to provide this court with any authority to support his argument.[33] In his Reply, Benz cites[34] *Podium Corporation Inc. v. Chekkit Geolocation Services., Inc.*, where this court acknowledged the "intracorporate immunity doctrine" may insulate an employee-agent from liability in a civil conspiracy claim.[35] However, this court discussed the doctrine while analyzing the defendants' 12(b)(6) Motions to Dismiss for failure to state a claim, not under its jurisdictional analysis. As Benz correctly notes, whether the intracorporate immunity doctrine applies here is "an argument for a future motion on the merits,"[36] not an argument for his 12(b)(2) Motion to Dismiss for lack of personal jurisdiction.

Indeed, the *Podium* court denied a Chief Operating Officer's (COO) 12(b)(2) Motion to Dismiss for lack of personal jurisdiction because the officer "played a critical role" in the allegedly tortious scheme.[37] The COO acted within the scope of their official position and sought to benefit the company, and yet the COO's 12(b)(2) Motion to Dismiss was denied.

---

[32] *Motion to Dismiss* at 2–4, 10.

[33] Benz's discussion of the imputed contacts rule is correct insofar as a WiTricity's contacts cannot be imputed to Benz, but the rule does not protect against an agent's own conduct—even if in service of the principal—that independently establishes minimum contacts.

[34] Dkt. 62, *Reply in Support of Defendant Edward Joseph Benz III's Rule 12(b)(2) Motion to Dismiss and Request for Oral Argument* (*Reply*) at 9.

[35] No. 2:20-CV-352, 2021 WL 5772269, at *6 (D. Utah Dec. 6, 2021).

[36] *Reply* at 9.

[37] *Podium Corp. Inc.*, 2021 WL 5772269, at *4.

Here, it is jurisdictionally irrelevant that Benz acted as WiTricity's agent because WAVE alleges Benz "spearheaded" WiTricity's scheme to steal WAVE's trade secrets.[38]

The law ensures tortfeasor-employees cannot hide behind a corporate shield when they participate in the corporation's wrongdoing. In *Calder v. Jones*, the Supreme Court ruled a defendant's "status as employee[] does not somehow insulate them from jurisdiction."[39] In *Calder*, a California resident sued the National Enquirer for an allegedly libelous story and joined non-resident writers and editors that produced the story.[40] The court determined California could exercise jurisdiction over the non-residents because they were "primary participants" in the alleged scheme.[41] Here, Benz held video calls with WAVE employees immediately before the employees resigned, downloaded troves of data, and accepted subsequent employment at WiTricity.[42] WAVE alleges Benz "spearheaded" the mass-resignation and subsequent misappropriation of trade secrets.[43] Accordingly, Benz cannot avoid this court's jurisdiction merely because he was acting as WiTricity's agent.

---

[38] *Amended Complaint* ¶ 236.

[39] 465 U.S. 783, 790 (1984).

[40] *Id.* at 783.

[41] *Id.* at 790.

[42] Dkt. 6-2, *Declaration of Michael Austin* ¶ 3–8.

[43] *Amended Complaint* ¶ 236.

## II. Benz's Conduct Satisfies the Harmful Effects Test.[44]

The parties dispute whether Benz's alleged actions satisfy the Harmful Effects Test.[45] The Harmful Effects Test considers whether a defendant engaged in intentional conduct directed toward the forum state while knowing the brunt of the injury would be felt in the forum state.[46] Benz insists he has only been to Utah once,[47] but the Harmful Effects Test is agnostic to the extent of one's physical presence in the forum state.

First, accepting all of WAVE's factual allegations as true (as the court must at this stage), the court finds WAVE has adequately pleaded Benz acted with sufficient intent when he orchestrated the mass-resignation of WAVE employees. Benz met with WAVE employees immediately before they resigned, and he hired them shortly thereafter.[48] Whether this conduct violated the law remains to be determined, but Benz's conduct was not "mere untargeted negligence."[49] Benz purposefully contacted WAVE employees and, by his own admissions, "hired" and "authorized" them to begin working at WiTricity.[50]

Second, Benz expressly aimed his efforts at Utah because the "focal point" of his intentional conduct was directed at Utah.[51] Eight WAVE employees that resigned and later joined WiTricity were based in Utah. Benz knew WAVE was a Utah-based company because

---

[44] Because the Harmful Effects Test provides the court with a basis for exercising jurisdiction, the court need not consider WAVE's arguments regarding conspiracy theory jurisdiction. *See* Dkt. 56, *Memorandum in Opposition to Defendant Edward Joseph Benz, III's Rule 12(b)(2) Motion to Dismiss* (*Opposition*) at 11.

[45] *Motion to Dismiss* at 9–11; *Opposition* at 8–11; *Reply* at 6–8.

[46] *Dudnikov*, 514 F.3d at 1072.

[47] Dkt. 40-1, *Declaration of Edward Joseph Benz III* ¶ 6.

[48] *Declaration of Michael Austin* ¶ 3; *Amended Complaint* ¶¶ 49–52, 236, 262; Dkt. 48-1, *Declaration of Edward Joseph Benz III* ¶¶ 28–39.

[49] *Calder*, 465 U.S. at 789.

[50] *Motion to Dismiss* at 4; Dkt. 48-1, *Declaration of Edward Joseph Benz III* ¶ 38.

[51] *Dudnikov*, 514 F.3d at 1075.

WiTricity had previously sought to acquire WAVE.[52] WAVE developed and maintained its trade secrets at its Utah headquarters, and its Utah-based employees had access to and knowledge of these secrets.[53] Benz allegedly onboarded these Utah-based employees into WiTricity's Utah operation after orchestrating their resignation from WAVE.[54] There is no forum more focal to this litigation than Utah.

Lastly, Benz knew harm would occur in Utah if WiTricity came into possession of WAVE's trade secrets and if WAVE's employees resigned en masse. Benz argues his conduct did not cause harm in the forum state because "[t]here is no Utah plaintiff" and because the State of Utah and Benz's co-defendants—many of whom are Utah residents themselves—are "better served" and "saved" because of WiTricity.[55] These arguments miss the mark. First, WAVE's principal place of business is in Utah,[56] and its incorporation in Delaware does not render it a non-Utah plaintiff.[57] Thus, any alleged injury threatening WAVE's business operations will be felt primarily in Utah.[58] Second, Benz's arguments misapply the third prong of the Harmful Effects Test, which considers whether foreseeable harm took place in the forum state, not whether the allegedly tortious conduct produced a net benefit for certain parties or in the forum

---

[52] *Amended Complaint* ¶¶ 32–34.

[53] *Id.* ¶¶ 22–27; Dkt. 6-4, *Declaration of Alfred Poor* ¶¶ 7–11.

[54] *Amended Complaint* ¶¶ 49–52; *Declaration of Edward Joseph Benz III* ¶¶ 28–32.

[55] *Reply* at 7.

[56] *Amended Complaint* ¶ 1.

[57] WAVE would be considered domiciled in Utah for diversity jurisdiction purposes and "at home" in Utah for general personal jurisdiction purposes. *See, e.g.*, *Newsome v. Gallacher*, 722 F.3d 1257, 1267 (10th Cir. 2013) ("[W]hen evaluating diversity jurisdiction, a corporation is considered domiciled where it is incorporated and where it has its 'principal place of business . . . .'"); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

[58] *Vivint, Inc. v. Alert Holdings Grp., Inc.*, No. 2:19-cv-215, 2019 WL 5637591, at *2–4 (D. Utah Oct. 31, 2019) (explaining that harm to a business "permeates to, and is most strongly felt at, the location where a business is based").

9

state itself. Benz's belief that his co-defendants will be better off is irrelevant, as are any secondary benefits the State of Utah may receive by virtue of Benz's allegedly tortious conduct.

Benz correctly notes that, to satisfy minimum contacts, a defendant cannot solely be connected to the forum state via the plaintiff; rather, the defendant must independently have contacts in the forum state.[59] However, Benz mistakenly implies WAVE's alleged injury is his only contact with Utah.[60] Benz is connected to Utah through many ex-WAVE employees residing in Utah who he contacted, hired, and with whom he is accused of conspiring. Benz's conduct satisfies the Harmful Effects Test because he purposefully directed activities toward these employees and knew his conduct would cause harm inside of Utah. Thus, Benz has sufficient contacts in Utah, and WAVE's injuries arise from these contacts, such that this court's exercise of specific personal jurisdiction over Benz is proper.

### III. The Exercise of Specific Personal Jurisdiction over Benz Is Fundamentally Fair.

Once minimum contacts are established, a court must also ensure exercising jurisdiction over the nonresident comports with traditional notions of "fair play and substantial justice."[61] Courts assess whether exercising personal jurisdiction is fair by weighing 1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.[62]

---

[59] *Motion to Dismiss* at 9 (quoting *Walden v. Fiore*, 134 S. Ct. 1115 (2014)).

[60] *Id.* at 9–10.

[61] *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 320 (1945).

[62] *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005).

Benz restates many of his arguments regarding his lack of contacts and directed activity in Utah in averring this court's exercise of jurisdiction would be constitutionally unfair.[63] But Benz is CEO of a company that has a robust Utah operation, Utah has a stronger relationship to the dispute than any alternative forum, and WAVE's conspiracy claims against Benz and other defendants would become unduly burdensome if WAVE were forced to litigate them in distinct forums. Considering the factors together, this court finds exercising jurisdiction here is consistent with fair play and substantial justice.

### IV. WAVE Has Satisfied Its Evidentiary Burden in Asserting Personal Jurisdiction.

Benz contends WAVE failed to meet its evidentiary burden in asserting personal jurisdiction because Alfred Poor, the CEO of WAVE's parent company Ideanomics, verified WAVE's Complaint without personal knowledge.[64] Benz asserts Poor could not have personal knowledge of the events described in the Complaint given his corporate distance from WAVE and, in any event, his veracity should be discounted given his prior settlement with the SEC.[65] Furthermore, Benz maintains his own declaration "eliminates every possible avenue for specific personal jurisdiction" and claims WAVE failed to substantiate its claim that Benz specifically recruited and targeted "Utah employees."[66] These contentions are without merit.

First, Benz's ad hominem attack against Poor fails to corroborate his claim that Poor perjured himself by verifying the Complaint. Benz is free to pursue sanctions or other relief if he believes WAVE improperly verified its Complaint. Without more than his assertion that Poor is

---

[63] *Motion to Dismiss* at 12–13.

[64] *Reply* at 3–4.

[65] *Id.* at 3.

[66] *Motion to Dismiss* at 11; *Reply* at 1–2.

a "fraudster,"[67] the court accepts Plaintiff's well-pleaded facts as true in the verified Amended Complaint, as is required at this stage of the litigation.[68] And here, WAVE pleaded sufficient facts in its Amended Complaint and accompanying declarations to support the exercise of jurisdiction over Benz, as discussed in detail above.

Second, Benz's declarations do not eliminate "every avenue" for personal jurisdiction because they consist of legal conclusions or jurisdictionally irrelevant statements. For example, Benz declares he never "caused any injury within this state whether tortious or by breach of warranty."[69] But this legal conclusion does not require this court to discount WAVE's well-pleaded facts alleging the exact opposite.[70] Benz also asserts he has not "engaged in transactions of any business within this state outside of [his] capacity as CEO of WiTricity. . . ." While this declaration may be uncontroverted, it is jurisdictionally irrelevant for the reasons stated herein.

Lastly, Benz argues WAVE lacks evidentiary support for its claims that he targeted "Utah employees."[71] Specifically, Benz argues the two video calls where he corresponded with Jory Peppellar and two other "unidentified" WAVE employees during WAVE business hours and documented on WAVE's internal data management systems[72] are insufficient evidence to meet WAVE's prima facie burden that he directed tortious activity in Utah.[73]

---

[67] *Reply* at 3.

[68] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (explaining that well pleaded facts in complaint must be accepted as true).

[69] Dkt. 40-1, *Declaration of Joseph Edward Benz III* ¶ 12.

[70] *Safety Techs., L.C.*, No. 98-2555, 1999 WL 588221, at *3 (affidavits consisting of "only conclusory statements" were "inadequate to sufficiently controvert the jurisdictional allegations set forth in the complaint").

[71] *Reply* at 2.

[72] WAVE argues these calls took place on its own video conferencing platform, whereas WiTricity contends that Benz joined via WiTricity's platform. See *Opposition* at 3–4; *Reply* at 2. However, the calls were evidently logged on WAVE's database, indicating the call participants used WAVE-related accounts and platforms.

[73] *Reply* at 2.

However, Benz himself acknowledged he made these calls "for the purpose of discussing employment with WiTricity" and declared he "authorized *all* New WiTricity Employees except Melanie Espinosa to begin work on August 14, 2024."[74] Accepting these allegations as true and understanding eight of these employees were Utah residents, this declaration confirms Benz's role in targeting and onboarding Utah-based employees and strongly suggests the "unidentified" participants were indeed Utah residents. Furthermore, WAVE alleges, and Benz does not dispute in any declaration, that Benz knew the new employees were bound by their former Utah-based employer to non-competition agreements as of at least 12 days before he authorized the new employees to begin work.[75] Accordingly, WAVE presented ample facts this court must accept as true to show Benz targeted Utah employees. The court finds WAVE satisfied its prima facie burden of establishing jurisdiction over Benz.

## CONCLUSION

For the foregoing reasons, Benz' Motion to dismiss is DENIED.[76]

SO ORDERED this 4th day of October 2024.

BY THE COURT:

_____
ROBERT J. SHELBY
Chief United States District Judge

---

[74] *Id.*; Dkt. 48-1, *Declaration of Edward Joseph Benz III* ¶ 38 (emphasis added).

[75] *Amended Complaint* ¶¶ 268–71.

[76] Dkt. 40.