IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| WIRELESS ADVANCE VEHICLE ELECTRIFICATION, LLC, a Delaware limited liability company,<br><br>         Plaintiff,<br><br>v.<br><br>WITRICITY CORPORATION, a Delaware corporation; JOE BENZ, an individual; JUSTIN SCALZI, an individual; STEVEN BALL, an individual; ROBERT EISERT, an individual; PRADEEP GADDAM, an individual; GARRETT HARMSEN, an individual; JORY PEPPELAAR, an individual; WYLEE STAPLES, an individual; GAYLA STEWART, an individual; ADEEL ZAHEER, an individual; GLEN AGUILAR, an individual; JUSTIN NORDLUND, an individual; and MELANIE ESPINOSA, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>2:24-cv-00577-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Now before the court are three related Motions.  First, Defendants WiTricity Corporation, Joe Benz, and Justin Scalzi (together, WiTricity Defendants) filed a Motion to Dismiss Plaintiff Wireless Advance Vehicle Electrification, LLC's (WAVE) claims against them under Federal Rule of Civil Procedure 12(b)(6).[1]  Second, WAVE filed a Motion to Amend its Complaint under

---

[1] Dkt. 93, *WiTricity Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)* (*Motion to Dismiss*).

Federal Rule of Civil Procedure 15 (Motion for Leave to Amend).[2]  Third, Defendants Ball, Eisert, Gaddam, Harmsen, Peppelaar, Staples, Stewart, Zaheer, Nordlund, Aguilar, and Espinosa (the Former Employees) filed a Motion for Permanent Injunction.[3]  For the reasons explained below, WAVE's Motion for Leave to Amend is GRANTED, the WiTricity Defendants' Motion to Dismiss is DENIED, and the Former Employees' Motion for Permanent Injunction is DENIED.

## BACKGROUND[4]

WAVE is a Delaware LLC with its principal place of business in Utah.[5]  WAVE operates in the inductive charging industry, offering high-power wireless charging systems for the heavy-duty electric vehicle market.[6]  WiTricity is a Delaware corporation with its principal place of business in Massachusetts, and it operates two locations in Utah.[7]  WiTricity primarily offers low-power wireless charging systems for electric vehicles.[8]  Over the past four years WiTricity has made several attempts to purchase or acquire WAVE.[9]

WAVE requires its employees to sign employment agreements containing confidentiality provisions and to review WAVE's "Employee Handbook" which includes a section concerning confidentiality protocols.[10]  The employment agreements for employees working at WAVE's

---

[2] Dkt. 124, *Plaintiff Wireless Advanced Vehicle Electrification, LLC's Motion for Leave to File Second Amended Complaint*.

[3] Dkt. 120, *Motion of Former-Employee Defendants for Permanent Injunction* (*Motion for Preliminary Injunction*). Jeffrey Harding was since dismissed from this action.  Dkt. 133, *Docket Text Order*.

[4] These facts are drawn from Dkt. 124-2, *Proposed Second Amended Complaint* (*PAC*).  As required on a motion to dismiss, the court accepts all well-pleaded allegations in the Consolidated Complaint as true.  *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012).

[5] *PAC* ¶ 1.

[6] *Id*. ¶¶ 22–24.

[7] *Id*. ¶ 2.

[8] *Id*. ¶ 30.

[9] *Id*. ¶ 32.

[10] *Id*. ¶¶ 35–36.

Utah headquarters with access to confidential information contain a one-year non-compete clause.[11]

Over a four-day period in late July 2024, 12 WAVE employees—many of whom are alleged to have stolen WAVE's confidential information and physical equipment— resigned from WAVE and immediately joined WiTricity.[12]  WAVE contends WiTricity facilitated this "mass resignation" as a coordinated attack on WAVE by encouraging WAVE employees to breach their employment agreements, download troves of confidential WAVE data, and steal WAVE physical equipment.[13]

On August 15, 2024, WAVE initiated suit against 13 former employees, WiTricity, Joe Benz (WiTricity's chief executive officer), and Justin Scalzi (WiTricity's vice president who himself was formerly employed by WAVE).[14]  WAVE alleged various Defendants violated employment agreements and stole or conspired to steal trade secrets, among other grievances.[15] WAVE moved for a Temporary Restraining Order (TRO) enjoining Defendants from engaging in related conduct.[16]  The court issued a corresponding TRO on August 29, 2024, enjoining 10 former WAVE employees from working for WiTricity for one year following their last day of employment at WAVE consistent with the non-compete provisions of their WAVE employment contracts.[17]  The court also enjoined 12 former WAVE employees from using or disclosing

---

[11] *Id*. ¶ 37.

[12] *Id*. ¶¶ 49, 72–74, 100, 116, 124, 133–34, 188–93, 201.

[13] *Id*. ¶ 51.

[14] Dkt. 3, *Verified First Amended Complaint* (*Complaint*).

[15] *Id*. ¶¶ 197–287.

[16] Dkt. 4, *Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction*.

[17] Dkt. 65, *Order Granting in Part and Denying in Part Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction* (*TRO*).

WAVE's confidential information.[18]  The TRO remained in effect through March 20, 2025 and was then converted to a preliminary injunction.[19]

The WiTricity Defendants moved to Dismiss WAVE's claims against them on October 21, 2024, arguing that WAVE failed to state a claim against them.  After initially opposing the Motion, WAVE subsequently filed a Motion to Amend its Complaint.  Meanwhile, the Former Employees moved to change the TRO (which has since been converted into a preliminary injunction) to a permanent injunction, which in their view concedes the "full extent of relief available to [WAVE]" as to the Former Employees and moots WAVE's claims against them.[20]  These Motions are fully briefed and ripe for review.[21]

## LEGAL STANDARDS

Rule 15 of the Federal Rules of Civil Procedures provides that, after a responsive pleading has been served, "a party may amend its pleading only with . . . the court's leave."[22]  "The court should freely give leave [to amend] when justice so requires,"[23] because "[t]he purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[24]

---

[18] *Id.*

[19] Dkt. 135, *Preliminary Injunction*.

[20] *Motion for Permanent Injunction* at 1.

[21] *See Motion to Dismiss*; Dkt. 98, *Opposition to WiTricity Defendants' Motion to Dismiss*; Dkt. 106, *WiTricity Defendants' Reply in Support of Their Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)*; *Motion for Leave to Amend*; Dkt. 128, *Defendants' Response to Plaintiff's Motion for Leave to Amend [ECF No. 124]* (*Opposition to Motion for Leave*); Dkt. 131, *Plaintiff Wireless Advanced Electrification, LLC's Reply in Support of its Motion for Leave to File Second Amended Complaint* (*Reply in Support of Motion for Leave to Amend*); *Motion for Permanent Injunction*; Dkt. 126, *Plaintiff's Opposition to Former-Employee Defendants' Motion for Permanent Injunction* (*Opposition to Motion for Permanent Injunction*).  Defendants did not file a Reply in Support of their Motion for a Permanent Injunction.

[22] Fed. R. Civ. P. 15(a)(2).

[23] *Id.*

[24] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

The Tenth Circuit instructs that "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[25] Whether an amendment is futile depends on whether the complaint, as amended, would be subject to dismissal.[26] "A general presumption exists in favor of allowing a party to amend its pleadings, and the non-moving party bears the burden of showing that the proposed amendment is improper."[27]

## ANALYSIS

The court finds Defendants fail to demonstrate WAVE's Motion for Leave to Amend was brought in bad faith or that the Proposed Second Amended Complaint would be subject to dismissal. Because WiTricity's Motion to Dismiss is directed at the First Amended Complaint, the court denies it as moot. And given there has been no resolution on the merits of WAVE's claims against the Former Employees, the court declines to issue a permanent injunction.

## I.    WAVE Satisfies Rule 15's Liberal Amendment Requirements.

WAVE's Proposed Second Amended Complaint: (1) adjusts the factual basis for its Tortious Interference, Unfair Competition, and Civil Conspiracy claims; (2) removes the WiTricity Defendants from its conversion claim; (3) reflects this court's Order on Defendants'

---

[25] *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

[26] *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999) (citing *TV Communications Network, Inc., v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992)).

[27] *Carrazco v. Morrison*, No. 21-cv-01277-NYW, 2022 WL 2666031, at *2 (D. Colo. July 11, 2022) (citing *Foman*, 371 U.S. at 182 and *Jefferson Cnty.*, 175 F.3d at 859; *see also Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020) ("The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases.") (citation omitted).

Motion to Stay preventing it from seeking money damages against the Former Employees; (4) clarifies the full scope of injunctive relief it seeks; and (5) adds factual detail to its state and federal computer abuse claims.[28]

Defendants claim WAVE's Motion was brought in bad faith to "multiply these proceedings and impose hardship and costs" on the Former Employees.[29] Defendants also contend WAVE acted with undue delay and prejudiced Defendants because it was first on notice of possible deficiencies in the operative complaint three months before it moved to amend.[30] Finally, Defendants argue WAVE's amendments are futile because they fail to state plausible claims against the WiTricity Defendants.[31] The court finds Defendants fail to meet their burden of showing WAVE's amendments are improper on any of these grounds.

### A. Wave's Amendments Do Not Indicate Improper Purpose, Undue Delay, or Unfair Prejudice.

WAVE's proposed amendments directly respond to relevant developments in these proceedings and do not indicate any improper purpose. The advisory notes to Rule 15 explain that one of the purposes of Rule 15(a) is to allow for an amendment after a 12(b) motion so that litigants can "consider carefully and promptly the wisdom of amending to meet the arguments in the motion."[32] Additionally, courts have explained "proposed amendments that seek to clarify or explain facts asserted in an original complaint are proper. However, bad faith may be inferred if

---

[28] *See generally*, *PAC*.

[29] *Opposition to Motion for Leave* at 2. *See also id* at 7 ("WAVE appears to seek to utilize the filing of the Second Amended Complaint to prolong and multiply the litigation against these workers for no reason other than to inappropriately punish them. WAVE continues to prolong the expense and hardship that this litigation has already wrought on these individuals, who merely hope to get back to work and support their families.").

[30] *Id*. at 2, 4.

[31] *Id*. at 5–7.

[32] Fed.R.Civ.P. 15 advisory committee's notes, 2009 Amendment.

the proposed amendments directly contradict the allegations made in the original pleading such that the original and amended factual accounts cannot be reconciled . . . ."

Here, Defendants argue in their Motion to Dismiss that WAVE's claims for Tortious Interference, Unfair Competition, Civil Conspiracy, and Conversion are preempted by the Utah Uniform Trade Secrets Act because the allegedly misappropriated trade secrets formed the factual basis for all the claims.[33]  But in the Proposed Second Amended Complaint, the amended allegations under WAVE's Tortious Interference and Unfair Competition claims do not mention theft of trade secrets and instead focus on WiTricity's allegedly improper acquisition of WAVE's workforce, market share, and physical property.[34]  Further, WAVE's amended civil conspiracy claim alleges a conspiracy to commit unfair competition, tortious interference, and conversion, rather than solely alleging a conspiracy to violate trade secret law.[35]  And finally, WAVE's amended conversion claim removes the WiTricity Defendants from the claim and highlights physical property, as opposed to WAVE's trade secrets, as the claim's foundation.[36]  Defendants do not explain why these amendments that directly respond to WiTricity Defendants' Motion to Dismiss somehow evince an improper purpose, and nowhere do they make the case that these amendments are irreconcilable with WAVE's allegations in their prior Complaint.

Additionally, WAVE's amendments directly respond to this court's Order Denying Defendants' Motion to Stay.[37]  In WAVE's First Amended Complaint, it sought money damages against the Former Employees,[38] which WAVE later conceded—and this court ordered—it could

---

[33] *Motion to Dismiss* at 8–13.

[34] *PAC* ¶¶ 262–76.

[35] *Id*. ¶¶ 236–45.

[36] *Id*. ¶¶ 277–81.

[37] Dkt. 111, *Memorandum Decision and Order Denying Motion to Stay*.

[38] Dkt. 3, *First Amended Complaint* ¶¶ 232, 266.

not pursue due to the Former Employees' arbitration agreements.[39]  In the Proposed Second Amended Complaint, WAVE removes any allegation or prayer for relief seeking money damages against the Former Employees.[40]  Defendants have not shown how WAVE's amendments conforming their Proposed Second Amended Complaint to this court's Order evinces an improper purpose.

Finally, WAVE's amendments clarify the scope of injunctive relief it seeks against the Former Employees, seemingly to respond to the Former Employees' Motion for Permanent Injunction.[41]  In that Motion, the Former Employees argue that, by stipulating to a permanent injunction, WAVE's claims against them are moot and, in turn, this court lacks jurisdiction to adjudicate them.[42]  WiTricity then cites WAVE's proposed amendments, which appear to widen the scope of relief they seek beyond what WiTricity stipulated to in its Motion for a Permanent Injunction, as evidence of WAVE's bad faith.[43]  But it is unclear why WAVE's efforts to ensure their claims against the Former Employees remain alive—claims which this court already determined had a high likelihood of success on the merits[44]—are irreconcilable with the facts in its prior complaint or otherwise constitute bad faith.  Even if WAVE's motivation for these amendments was to ensure it could pursue discovery against the Former Employees because they

[39] *Memorandum Decision and Order Denying Motion to Stay* at 5 n.26.

[40] *PAC* ¶¶ 234, 266.

[41] *PAC* pp. 60–61.

[42] *Motion for Permanent Injunction* at 6–7.

[43] *Opposition to Motion for Leave* at 7 ("Moreover, WAVE's motive, as evidenced by its timing—shortly after the Former Employees' motion to convert the TRO into a permanent injunction—is improper.").

[44] *TRO* at 9–17.

believe it will shed light on their claims against the WiTricity Defendants, Defendants cite no authority suggesting such a motivation would be an improper purpose.[45]

To be sure, Defendants' multiple failed motions seeking to drastically expand WAVE's bond requirement,[46] to compel arbitration,[47] to covert a TRO into a permanent injunction without admitting fault,[48] and now their opposition to a routine Rule 15 Motion, in conjunction with their apparent refusal to engage in any discovery,[49] make hollow their contention that WAVE is the party responsible for "multiply[ing] these proceedings and impos[ing] hardship and costs."[50]  But even with a confined evaluation of WAVE's Motion to Amend without regard WiTricity's lack of success on these other motions, it is evident that WAVE's amendments meaningfully respond to developments throughout the litigation.  In a vacuum, a three-month delay in seeking leave to amend a complaint after being put on notice of deficiencies may suggest dilatory motive, but this is not so here where Defendants' multiple interim motions have interrupted the litigation, and Defendants have refused to engage in discovery.[51]  Given the contours of this case, the court

---

[45] As WAVE points out, and as this court has previously mentioned, there is a serious risk of a conflict of interest here where the WiTricity Defendants and the Former Employees share counsel but are no longer employed at WiTricity.  *Opposition to Motion for Permanent Injunction* at 3 n.3; Dkt. 83, *Official Transcript of Motion for Temporary Restraining Order and Motion for Preliminary Injunction held on August 26, 2024 before Judge Robert J. Shelby* at 5–6.  It is possible the Former Employees and the WiTricity Defendants have divergent interests with respect to participating in discovery.

[46] Dkt. 66, *Defendants' Expedited Motion to Reconsider Bond Amount*; Dkt. 91, *Memorandum Decision and Order Denying Defendants' Motion for Bond*.

[47] Dkt. 75, *Defendants' Motion to Stay Litigation and Compel Arbitration*; *Memorandum Decision and Order Denying Motion to Stay*.

[48] *Motion for Preliminary Injunction*.  The court addresses why this Motion fails in further detail below.

[49] *Motion for Leave* at 2–3; *Opposition to Motion for Permanent Injunction* at 4–5.  Defendants do not deny or recharacterize WAVE's description of the discovery process thus far.

[50] *Opposition to Motion for Leave* at 2.

[51] *Motion for Leave* at 2–3; *Opposition to Motion for Permanent Injunction* at 4–5.

finds it is in the interest of justice to permit amendment here despite WAVE's modest delay in

filing its Motion.[52]

Importantly, Defendants also misstate WAVE's burden under Rule 15. They cite the

undersigned's opinion in *Total Quality Systems, Incorporated v. Universal Synaptics*

*Corporation*[53] to suggest that WAVE was required to justify why the amendments could not have

been included in prior version.[54] But in *Total Quality Systems*, the party seeking leave to amend

had missed the scheduling order's amendment deadline, which required this court to employ the

"more stringent" Rule 16 standard to evaluate the Motion.[55] Here, no such deadline has been

set—evidently in part because of Defendants' efforts to avoid commencing discovery[56]—and

thus WAVE is not the party who bears the burden to justify its amendment.[57] Rather, WiTricity

must show that WAVE's Motion is improper for at least one reason outlined in Rule 15.[58] For the

reasons already explained, WiTricity fails to meet this burden as to improper purpose or undue

delay.

---

[52] *Gillette v. Tansy*, 17 F.3d 308 (10th Cir. 1994) ("At the pace this case was proceeding, there is no indication that allowing amendment would have caused undue delay.")

[53] No. 1:22-CV-00167-RJS-DAO, 2025 WL 252791 (D. Utah Jan. 21, 2025).

[54] *Opposition to Motion for Leave* at 4.

[55] 2025 WL 252791 at *2–4. Defendants also quote *Frank*, 3 F.3d at 1365–66 to argue that WAVE's amendments were based on information WAVE already possessed and should therefore be deemed improper. Opposition to Motion for Leave at 4–5. But in *Frank*, although the court analyzed the motion under Rule 15, the motion was filed four months after the court's deadline for amended pleadings, meaning that today the case would be evaluated under Rule 16. Furthermore, *Frank* itself cites to *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182 at 1185 (10th Cir.1990) for the same proposition—that a party seeking amendment based on information already known to that party may be considered improper— but there, too, the motion for leave to amend was filed one month before trial had been set. Even if Defendants are correct that WAVE knew or should have known the facts underlying the amendments, Defendants fail to provide any authority where such a failure was fatal to a party's attempt to amend a pleading under Rule 15 where no scheduling order has been entered.

[56] *Motion for Leave* at 2–3; *Opposition to Motion for Permanent Injunction* at 4–5.

[57] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014) (holding "parties seeking to amend their complaint after a scheduling order deadline must establish good cause for doing so").

[58] *See Jefferson Cnty.*, 175 F.3d at 859 and *Openwater Safety IV, LLC*, 435 F. Supp. 3d 1142 at 1151.

Neither is the court concerned Defendants would be prejudiced by allowing amendment. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'"[59]  Typically, "this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[60]

Here, nothing in the Proposed Second Amended Complaint raises a new subject matter or would appear to hamper Defendants' ability to challenge it.  Although WAVE adds new bases for its civil conspiracy claims against the WiTricity Defendants,[61] the factual matter underlying this amended claim was generally already raised in the First Amended Complaint.  But even so, no meaningful discovery has taken place, and so the court fails to see how Defendants will be prejudiced in defending WAVE's amended claim civil conspiracy claim or any other.  And as WAVE points out, WAVE explicitly sought dismissal without prejudice in responding to Defendants' Motion to Dismiss if the court was inclined to grant the motion in full or part.[62] Thus, even if the court had granted Defendants' Motion to Dismiss, it's likely that the result— WAVE filing an amended complaint—would have been the same.  Relying on *U.S. ex rel. Ritchie v. Lockheed Martin Corporation*, Defendants argue they would be prejudiced if this court grants WAVE's Motion for Leave to Amend because it would render the time they expended filing their Motion to Dismiss useless.[63]  But Defendants' reliance on *Lockheed* is misplaced.  In *Lockheed*,

---

[59] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting *Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir.1971)).

[60] *Id*. (citations omitted).

[61] *See* Dkt. 124-1, *Redline of Proposed Second Amended Complaint* at 51 (clarifying the scope of the alleged civil conspiracy against the WiTricity Defendants to include a civil conspiracy to engage in unfair competition, commit tortious interference, and conversion).

[62] *Reply in Support of Motion for Leave to Amend* at 2 n.2.

[63] *Opposition to Motion for Leave* at 4 (citing *U.S. ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161 at 1167 (10th Cir. 2009)).

the court denied a motion to amend after the close of discovery and after a motion for summary judgment had been filed, noting that such a late amendment would prejudice the party that expended the time in filing the dispositive motion.[64]  Defendants' concealment of this context is concerning: the Tenth Circuit carefully distinguished the facts in *Lockheed* from one that "was far from final disposition, [where] no scheduling order had been issued, no trial date set, and no cut-off date for motions set."[65]  All of those conditions—which the Circuit implied support granting motions to amend—are present here.  In sum, the court finds there is no evidence WAVE brought its Motion in bad faith, the Motion prejudices the Defendants, or the Motion was so belated that it justifies denial.

### B. WiTricity Fails to Demonstrate WAVE's Amendments Are Futile.

Defendants also fail to show WAVE's Proposed Second Amended Complaint would be subject to dismissal.  Defendants appear to argue WAVE's amendments are futile on two fronts: that the amendments to the allegations against the WiTricity Defendants do not change the fact that their claims are facially implausible and overly-conclusory for the reasons they outline in their Motion to Dismiss, and that the amendments to WAVE's allegations against the Former Employees fail to defeat the mootness issue created by the Former Employees' Motion for Permanent Injunction.[66]  As will be discussed in further detail below, the Former Employees' Motion for Permanent Injunction is improper under Rule 65, so there is no mootness problem with WAVE's allegations against the Former Employees.  And despite the WiTricity Defendants' arguments to the contrary, the court finds the Proposed Second Amended Complaint states plausible claims against the WiTricity Defendants for violation of the Defend Trade Secrets Act

---

[64] *Lockheed*, 558 F.3d at 1167.

[65] *Id*.  (referencing *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250–51 (10th Cir. 2001)).

[66] *Opposition to Motion for Leave* at 5–7.

and the Utah Uniform Trade Secrets Act.  As for the remaining claims against the WiTricity Defendants—civil conspiracy, unfair competition, and tortious interference—Defendants fail to meet their burden in showing WAVE's amendments are futile.

A motion to dismiss for failure to state a claim "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."[67]  A complaint need not set forth detailed factual allegations, yet "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient.[68]  Dismissal is inappropriate if the complaint "includes enough facts that, if assumed to be true, state a claim that is plausible on its face."[69]  Plausible claims are those with sufficient factual content to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct."[70]

### 1.  WAVE's Trade Secrets Claims.

WAVE brings its claims for misappropriation of trade secrets under the federal Defend Trade Secrets Act (DTSA) and the Utah Uniform Trade Secrets Act (UTSA).[71]  The elements of a claim for trade secret misappropriation under both statutes closely resemble each other.  To establish a claim under the DTSA, a plaintiff must show: "(1) the existence of a trade secret; (2) the acquisition, use, or disclosure of the trade secret without consent; and (3) that the individual

---

[67] Fed. R. Civ. P. 12(b)(6); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991)).

[68] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[69] *Id*.

[70] *Id*.

[71] *Proposed Second Amended Complaint* ¶¶ 198–218.

acquiring, using, or disclosing the trade secret knew or should have known the trade secret was acquired by improper means."[72]

In their Motion to Dismiss, Defendants argue WAVE's allegations in support of its trade secret claims "are entirely conclusory, merely parroting the elements of the cause of action, and made 'on information and belief.'"[73]  Defendants appear to incorporate this same argument in contending WAVE's amendments are futile.[74]

In response to Defendants' Motion to Dismiss, WAVE lists a series of cases where similar allegations survived the motion to dismiss stage.[75]  WAVE additionally argues that courts are free to presume an intent to misappropriate trade secrets where "an employee with knowledge of a company's specialized trade secrets accepts a related position with a competitor in circumstances allowing an inference that disclosure/use of the trade secrets would inevitably occur in the new position."[76]

Defendants fail to adequately challenge the authorities WAVE relies on to support its trade secrets claims.  This court's decision in *Vendr, Inc. v. Tropic Technologies, Inc.* presents one illustrative example.[77]  There, the plaintiff alleged that a former employee and his new employer misappropriated confidential information and trade secrets.[78]  That former employee had access to trade secrets, was subject to confidentiality agreements of which the new employer was aware,

---

[72] *John Bean Techs. Corp. v. B GSE Grp.*, LLC, 480 F. Supp. 3d 1274, 1302 (D. Utah 2020) (internal quotation marks and citation omitted).

[73] *Motion to Dismiss* at 7.

[74] *Opposition to Motion for Leave* at 5–6.

[75] *Opposition to Motion to Dismiss* at 10–13.

[76] *Id.* at 12 (citing *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 at 1269–70 (7th Cir. 1995) and *Novell v. Timpanogos Research Grp., Inc.*, 1998 WL 177721, at *27–28 (D. Utah Jan. 30, 1998)).

[77] No. 2:23-CV-165-DAK-DAO, 2023 WL 8789297 (D. Utah Dec. 19, 2023).

[78] *See generally, id.*

and had downloaded "a significant amount" of confidential information shortly before joining a competitor.[79]  This court concluded that although the complaint lacked details about what precise information was disclosed or had been used, the plaintiff had alleged sufficient facts to survive a Rule 12 dismissal motion.[80]  Specifically, the court stated that "[w]hile [plaintiff] has failed to allege any specific facts about what information [the former employee] disclosed to [the new employer], when that disclosure occurred, or how it occurred, the parties can explore those details in discovery."[81]  The court pointed to the following allegations to support its decision: the parties were "known competitors," the new employer had "actual notice" of the new employee's acquisition of the trade secrets, and that the new employer had been engaged in a "predatory campaign" to acquire trade secrets that evidently involved "concerted efforts to contact and recruit Vendr employees."[82]

Defendants attempt to distinguish *Vendr* by noting the former *Vendr* employee "had wiped clean his company computer, began employment with the defendant, and continued to be employed there in a competitive role after his new company was repeatedly notified of the issue and failed to take action."[83]  But defendants ignore that the Former Employees would have remained employed at WiTricity in competitive roles even though they were on notice the Former Employees were in breach of their employment agreements but for this court's TRO.[84]  And while there is no allegation Defendants *deleted* WAVE data, WAVE alleges certain Former

---

[79] *Id*. at *1–2.

[80] *Id*. at *5.

[81] *Id*.

[82] *Id*. at *2, *4–5.

[83] *Reply in Support of Motion to Dismiss* at 5.

[84] *See TRO* at 3 (prohibiting Former Employees from working at WiTricity for one year consistent with the non-compete provisions in their employment contracts); *Proposed Second Amended Complaint* ¶ 196–97.

Employees "downloaded massive amounts of [WAVE] data" onto personal devices.[85] Other Former Employees allegedly removed physical equipment—a hard drive and power source—from WAVE's facility.[86] Defendants do not explain why these allegations are meaningfully different from the defendant in *Vendr* who "wiped clean his company computer." Additionally, Defendants do not account for the fact the court appeared to accept the allegation that only one new *Vendr* employee was actually hired pursuant to the alleged "predatory campaign" as a fact giving rise to a reasonable inference the new employer used or acquired trade secrets .[87] Here, after WiTricity's allegedly concerted efforts to contact and recruit them, 12 ex-WAVE employees—including nearly its entire Utah workforce—resigned from WAVE and joined WiTricity over a four-day period, dwarfing the allegations of successful employee-poaching in *Vendr*.[88]

At bottom, despite some gaps concerning which specific trade secrets were communicated to WiTricity and when, WAVE's allegations suggest WiTricity (1) knew the Former Employees were privy to trade secrets at WAVE[89]; (2) launched a campaign to recruit the Former Employees facilitated on WAVE's network[90]; (3) did in fact hire several employees that downloaded WAVE data onto personal devices and/or stole physical equipment[91]; and (4) operates as WAVE's direct competitor that would likely benefit from the kinds of trade secrets to

---

[85] *Proposed Second Amended Complaint* ¶¶ 100, 116, 124, 133–34, 190–93, 201.

[86] *Id*. ¶¶ 72–73, 278.

[87] *See Vendr*, 2023 WL 8789297 at *1–2 (explaining that the new employee was only one of many employees contacted by the new employer but centering its allegations only on the one employee actually hired by the new employer).

[88] *Proposed Second Amended Complaint* ¶ 49.

[89] *Id*. ¶¶ 268–71.

[90] *Id*. ¶¶ 50–51.

[91] *Id*. ¶¶ 100, 116, 124, 133–34, 191–93, 201.

which the Former Employees had access.[92]  Together, these allegations provide a sufficient

factual basis for this court to reasonably infer WiTricity misappropriated WAVE's trade secrets.[93]

As in *Vendr*, the best avenue to determine exactly what trade secrets WiTricity used or

acquired—if any—is through discovery.

 In their Motion to Dismiss, Defendants repeatedly obfuscate material facts alleged in the

First Amended Complaint and misstate the standards and burdens under Rule 12.  For example,

Defendants assert WAVE asks this court to make an unreasonable inference because the

misappropriation allegations are "premised on a false equivalency": "the mere fact of the

attempted hirings" suddenly means the WiTricity Defendants "must have misappropriated

WAVE's information."[94]  But this court is not relying on this "mere fact" to conclude the

WiTricity Defendants "must" be liable for misappropriation.  As already explained, many alleged

facts beyond the "attempted hirings," accepted as true, allow this court to conclude it is *plausible*

the WiTricity Defendants misappropriated trade secrets.

 Relatedly, Defendants' insistence that WAVE's allegations made "upon information and

belief" render WAVE's Complaint deficient[95] is contrary to well-settled law concerning Rule 12.

As WAVE points out, the plausibility standard "does not prevent a plaintiff from pleading facts

alleged upon information and belief where the facts are peculiarly within the possession and

---

[92] *Id*. ¶¶ 22–34, 50–51, 61–63, 80, 90, 98, 106, 113, 123, 132, 142, 150, 158, 166, 171.

[93] *See Ashcroft*, 556 U.S. at 677 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (internal quotation marks and citations omitted).

[94] *Reply in Support of Motion to Dismiss* at 1–2.

[95] *Motion to Dismiss* at 7–8.  In opposing WAVE's Motion for Leave to Amend, Defendants appear to take issue with WAVE's removal of "upon information and belief" in certain portions of the Proposed Second Amended Complaint. *See Opposition to Leave to Amend* at 5.  However, because "upon information and belief" remains included under WAVE's trade secret claims in the Second Proposed Amended Complaint, the court assumes the WiTricity Defendants reaffirm this argument in their contention that WAVE's Motion for Leave to Amend is futile. *See Proposed Second Amended Complaint* ¶¶ 201, 213, 217.

control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."[96]  WAVE's allegations pleaded upon information and belief under its trade secret claims satisfy both conditions.[97]

And lastly, in their Opposition to WAVE's Motion for Leave to Amend, Defendants twice cite the TRO as evidence this court has already "found that WAVE [is] unlikely to prevail on the merits of its claims" and determined WAVE has "no evidence that the WiTricity Defendants obtained, or conspired to obtain, any of WAVE's confidential information or trade secrets."[98] Again, Defendants misstate the law by confusing Rule 65 with Rule 12; a plausible claim is not the same as one that has a high likelihood of success on the merits.[99]  Assessing WAVE's claims under the appropriate rule, the court finds that the Proposed Second Amended Complaint asserts plausible claims for violations of the DTSA and UTSA.

### 2. Tortious Interference, Unfair Competition, Civil Conspiracy, and Conversion claims.

---

[96] *Opposition to Motion to Dismiss* at 8–9 (quoting *Aaag-California, LLC v. Kisana*, No. 2:20-cv-00026-HCN-JCB, 2020 WL 2849929, at *2 (D. Utah June 2, 2020).

[97] *See e.g.*, *PAC* ¶ 201 ("On information and belief, WiTricity is making or intends to make use of WAVE's confidential, proprietary, and trade secret information to further its business interests. On information and belief, WiTricity's use and/or intended use has occurred and/or will occur with WiTricity's knowledge that WAVE's confidential, proprietary, and trade secret information was derived from WAVE's former employees in violation of their contractual and fiduciary duties and obligations to maintain WAVE's information's secrecy."); *id.* ¶ 213 ("On information and belief, the Misappropriation Defendants are intending to, or are already making use of, those trade secrets and know-how in the context of engaging in comparable positions at WiTricity and seeking to provide WiTricity with a competitive advantage.  On information and belief, the Conspiring Employees have, without WAVE's consent, disclosed to the WiTricity Defendants WAVE's confidential, proprietary, and trade secret information to benefit WiTricity, WAVE's competitor.  On information and belief, the WiTricity Defendants are making use or intending to imminently make use of WAVE's confidential, proprietary, and trade secret information to further WiTricity's business interests.  On information and belief, WiTricity's use and/or intended use has occurred and/or will occur with WiTricity's knowledge that WAVE's confidential, proprietary, and trade secret information was derived from WAVE's former employees in violation of their contractual and fiduciary duties and obligations to maintain WAVE's information's secrecy.").

[98] *Opposition to Motion for Leave to Amend* at 1 n.1, 3.

[99] *Compare Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2019) (stating a TRO requires a showing of "a substantial likelihood of prevailing on the merits") *with Ashcroft*, 556 U.S. at 677 (stating a complaint survives a dismissal under Rule 12(b)(6) if it is plausible on its face).

Defendants repeatedly ask the court to refer to their Motion to Dismiss—filed before the
WAVE filed its Proposed Second Amended Complaint—to find that WAVE's proposed
amendments are futile without meaningfully addressing any of the amendments and explaining
why they are futile.  The court nevertheless considered Defendants' arguments in their Motion to
Dismiss with respect to WAVE's trade secret claims because WAVE did not substantively amend
those claims.  But WAVE meaningfully amended the factual basis for its tortious interference,
unfair competition, civil conspiracy, and conversion claims,[100] and the court struggles to identify
why the WiTricity Defendants believe the amendments are futile.

In their Motion to Dismiss, Defendants make two arguments with respect to WAVE's
Tortious Interference, Unfair Competition, Civil Conspiracy, and Conversion claims: they are
preempted by the UTSA, and the allegations under these claims are too conclusory and
speculative to state a claim.[101]  But in their Opposition to WAVE's Motion for Leave to Amend,
the WiTricity Defendants' engagement with WAVE's amendments is limited to: (1) contending
WAVE's amendments are based on "information WAVE already possessed";[102] (2) decrying
WAVE's amendments as mere "recharacterizations"[103] of their claims and arguing they do not
change Defendants' preemption analysis in their Motion to Dismiss;[104] and (3) arguing WAVE's

---

[100] *Redline of Proposed Second Amended Complaint* at 55 (removing any mention of trade secrets and emphasizing
loss of workforce and business operations under claim for Unfair Competition); *id*. at 57–58 (removing and
emphasizing the same under claim for tortious interference); *id*. at 58–59 (removing and emphasizing the same
against only Defendants Ball and Zaheer and removing the WiTricity Defendants from the claim); *id*. at 51
(clarifying the scope of the alleged civil conspiracy against the WiTricity Defendants to include a civil conspiracy to
engage in unfair competition, commit tortious interference, and conversion).

[101] *See generally Motion to Dismiss*.

[102] *Opposition to Motion for Leave to Amend* at 4.

[103] *Opposition to Motion for Leave to Amend* at 5.

[104] *See id*. at 6 ("Lastly, for the reasons already stated in the Motion to Dismiss, all of WAVE's statutory and
common law tort claims are, and remain, preempted.") and *id*. at 4 ("But, these underlying torts are preempted, as
explained in the motion to dismiss, so WAVE has failed to plead a predicate tort upon which a conspiracy theory
could rest.").

amendments are "either just as conclusory as before. . . or more conclusory."[105]  However, just because WAVE's amendments may have been rooted in "information WAVE already possessed" has no bearing on the futility inquiry.  And Defendants do not explain why WAVE's amendments are "just as conclusory as before" or why the preemption analysis remains unchanged beyond asking the court to refer to their Motion to Dismiss.[106]  Particularly troubling is that when Defendants make these arguments, they provide no citations to the Proposed Second Amended Complaint, making it difficult for the court to ascertain which amendments the Defendants are opposing and why they are futile.  Instead, they ask the court to intuit why the proposed amendments are futile based on their Motion to Dismiss, which is targeted at an earlier version of WAVE's complaint.

For example, Defendants contend certain amendments wherein WAVE removed instances of pleading on "information and belief" does nothing to cure what they argue are overly-conclusory allegations.[107]  But they do not explain why WAVE's claims remain implausible, nor do they indicate which particular instances of removing "upon information and belief" are unavailing for which claims.[108]  Aside from the fact a core argument in the WiTricity Defendants' Motion to Dismiss was WAVE's apparent overreliance on pleading upon on information and belief,[109] the court is left to guess which claims in the Proposed Second Amended Complaint are factually deficient notwithstanding certain deletions of "upon information and belief" and why these deletions have no bearing on the outcome for a given claim.  Despite WiTricity Defendants'

---

[105] *Id*. at 3–4 ("Moreover, these proposed revisions are futile in that they do not cure the deficiencies identified in the WiTricity Defendants' pending, fully briefed motion to dismiss. . .").

[106] *Id*. at 3–5.

[107] *Id*. at 3, 5.

[108] *Id*. at 3.

[109] *Motion to Dismiss* at 1–8.

broad contention that WAVE's claims remain factually insufficient, they only mention one claim by name[110] and fail to cite to the Proposed Second Amended Complaint to explain why that particular claim, as amended, is subject to dismissal.

Most vexing, however, is Defendants' failure to explain why WAVE's claims for Tortious Interference, Unfair Competition, Civil Conspiracy, and Conversion are still preempted notwithstanding WAVE's amendments beyond denouncing the amendments as mere "recharacterizations" and asking the court to refer to their Motion to Dismiss.[111] Recharacterizing a claim is often the very purpose of an amendment, and pointing out that a claim is "recharacterized" does nothing to show why the amended claim is subject to dismissal.

As noted at the outset, Defendants bear the burden to show WAVE's amendments are improper.[112] Their lack of citations to the Proposed Second Amended Complaint, their reliance on their Motion to Dismiss targeted at an earlier version of WAVE's complaint, and their lack of meaningful engagement with WAVE's substantive amendments prevent this court from finding Defendants came anywhere near satisfying this burden. Because WAVE meaningfully amended its Tortious Interference, Unfair Competition, Civil Conspiracy, and Conversion claims,[113] the court declines to conjure arguments or scrutinize the Proposed Second Amended Complaint with particularity on Defendants' behalf to show the amended claims remain preempted and/or

---

[110] *Opposition to Motion for Leave to Amend* at 5 (mentioning Utah's Unfair Competition statute). WiTricity Defendants do mention WAVE's civil conspiracy action, but only in the context of arguing it remains preempted, not that it is factually insufficient. *See id.* at 4. And as discussed above, they fail to explain why the civil conspiracy claim remains preempted.

[111] *Id.* at 4, 6.

[112] *Openwater Safety*, 435 F. Supp. 3d at 1151.

[113] *See Redline of Proposed Second Amended Complaint* at 55 (removing any mention of trade secrets and emphasizing loss of workforce and business operations under claim for Unfair Competition); *id.* at 57–58 (removing and emphasizing the same under claim for tortious interference); *id.* at 58–59 (removing and emphasizing the same against only Defendants Ball and Zaheer, and removing the WiTricity Defendants from the claim); *id.* at 51 (clarifying the scope of the alleged civil conspiracy against the WiTricity Defendants to include a civil conspiracy to engage in unfair competition, commit tortious interference, and conversion).

factually insufficient.  Defendants may properly make this argument in a renewed motion to dismiss if they so choose.

## II.    Rule 65 Does Not Permit Defendants from Unilaterally Stipulating to Relief Without Admitting Fault.

The Former Employees move the court to "convert the TRO into a permanent injunction" or, in the alternative, to "find that Plaintiff's claims against the Former Employees have become moot" and "dismiss the claims against them for want of subject-matter jurisdiction."[114]  Federal Rule of Civil Procedure 65(a)(2) states "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."  After the Former Employees filed their Motion, the court converted the TRO to a Preliminary Injunction.[115]

The Former Employees provide a series of authorities from other circuits purporting to allow the conversion of a preliminary injunction into a permanent injunction "absent a trial under appropriate circumstances."[116]  But the cases Defendants rely on still assume the entry of a permanent injunction only upon a full adjudication of the merits, albeit without a trial.[117] Nowhere in Defendants' papers have they admitted fault, conceded the merits, or sought a consolidated hearing on the merits of WAVE's claims under Rule 65(a)(2).  Instead, they

---

[114] *Motion for Permanent Injunction* at 2.

[115] *Preliminary Injunction*.

[116] *Id*. at 5.

[117] *See Penn Cent. Corp. v. U.S. R.R. Vest. Corp.*, 955 F.2d 1158, 1164 (7th Cir. 1992) (explaining that a defendant could not resist entry of a permanent injunction against the enforcement of a statute the court "found" to be unconstitutional); *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 458 (7th Cir. 1993) (explaining that  Federal Rule of Civil Procedure 65(a)(2) "afford[s] the district court discretion to consolidate *the merits with the preliminary injunction hearing*") (emphasis added); *United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983) (holding that entry of preliminary injunction without an evidentiary hearing was permitted where the lower court conclusively determined a dispositive, purely legal question); *see also Smith v. Cheyenne Mountain Sch. Dist. 12*, No. 14-cv-02651-PAB-CBS, 2015 U.S. Dist. LEXIS 141078, at *3-4 (D. Colo. Oct. 16, 2015) (converting a preliminary injunction into a permanent one when unobjected to by either party).

explicitly decline to concede wrongdoing.[118]  As WAVE points out,[119] under these circumstances,

the court cannot enter a permanent injunction notwithstanding the Former Employees'

willingness to permanently abide by the terms of this court's preliminary injunction.  The Former

Employees did not file a Reply brief contesting this point or any others raised by WAVE.

Additionally, the Former Employees' offer to voluntarily stipulate to the relief WAVE

seeks against them does not render WAVE's claims against them moot under Article III.  "A case

is moot when the issues presented are no longer 'live' or the parties lack a cognizable interest in

the outcome."[120]  Here, the Former Employees fail to show why their offer to acquiesce to

WAVE's requested relief must either be accepted by WAVE or, if not accepted, deprive the court

of jurisdiction.  WAVE maintains a cognizable interest in the outcome of its claims against the

Former Employees because it evidently rejected the Former Employees' offer.  And this offer—

converting a temporary restraining order that restored the status quo before Defendants' allegedly

wrongful conduct into a permanent injunction—amounts to a promise to voluntarily cease the

complained-of conduct.  In the Tenth Circuit, "[v]oluntary cessation of offensive conduct will

only moot litigation if it is clear that the defendant has not changed course simply to deprive the

court of jurisdiction."[121]  Further, "[t]he party asserting mootness bears the "heavy burden of

persuading the court that the challenged conduct cannot reasonably be expected to start up

again."[122]  The Former Employees have failed to meet this burden; they do not detail why there

---

[118] *Motion for Permanent Injunction* at 4.

[119] *Opposition to Motion for Permanent Injunction* at 8–10.

[120] *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).  See also Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307 (2012) (noting that a case is moot if "it is impossible for a court to grant any effectual relief whatever to the prevailing party.").

[121] *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (quotation marks and citation omitted).

[122] *Id*. at 1116 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quotation marks and alteration omitted)).

is no risk of the complained-of conduct beginning again, and the court is not convinced the Former Employees' primary motivation in seeking a permanent injunction was not to moot WAVE's claims against them. Indeed, no other motivation appears as likely: the Former Employees complain in their Motion that "continuing this matter at this point will only delay the final results, and increase the expenses of this action, cause unnecessary delay, and needlessly increase the cost of litigation, to say nothing of judicial economy."[123] In other words, the Former Employees apparently sought a permanent injunction—without conceding any wrongdoing—to end the litigation and frustrate WAVE's ability to pursue discovery. The Former Employees are free to settle WAVE's claims against them to achieve this result; they may not, however, do so by offering to cease wrongful conduct and restore the status quo permanently, and then asking the court to find there is no live case or controversy.

Finally, in light of the court's ruling on WAVE's Motion for Leave to Amend, the Former Employees' Motion for Permanent Injunction is directed at a non-operative complaint. The extent of relief to which the Former Employees are willing to stipulate no longer appears to encompass the extent of relief WAVE seeks.[124] Accordingly, it is likely the Former Employees' Motion for Permanent Injunction is moot. However, because it is unclear the extent to which the relief WAVE seeks against the Former Employees is meaningfully different or attainable, the court couches its reasoning on Defendants' failure to demonstrate grounds for entering a permanent injunction under Rule 65 or on account of mootness under Article III.

---

[123] *Motion for Permanent Injunction* at 4.

[124] *Redline of Proposed Second Amended Complaint* at 60–61.

## CONCLUSION

For the foregoing reasons, the court DENIES WiTricity Defendants' Motion to Dismiss,[125] DENIES the Former Employees' Motion for a Permanent Injunction,[126] and GRANTS WAVE's Motion for Leave to Amend.[127]

SO ORDERED this 24th day of March 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[125] Dkt. 93.

[126] Dkt. 120.

[127] Dkt. 124.